

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. James E. Kilday, Director
Motor Transportation Division
Railroad Commissioner of Texas
Austin, Texas

Dear Sir:

Opinion No. 0-1107
Re: Does the Railroad Commission
of Texas have authority to promul-
gate rules and regulations apper-
taining to the management and
government of bus terminals?

We are in receipt of your letter of July 17,
1939, in which you request an opinion regarding the ex-
tent of the jurisdiction and authority of the Railroad
Commission of Texas to promulgate rules and regulations
governing the management of bus terminals in this state,
and whether the particular rules and regulations con-
tained in Motor Bus Docket No. 1345, submitted with your
inquiry, are valid.

We quote the provisions of the law, which we be-
lieve pertinent in the premises:

"Art. 911a. - MOTOR BUS TRANSPORTATION AND
REGULATION BY RAILROAD COMMISSION.

Section 4.

"(a) The Commission is hereby vested with
power and authority and it is hereby made its
duty to supervise and regulate the public ser-
vice rendered by every motor bus company oper-
ating over the highways in this State, to fix
or approve the maximum or minimum, or maximum
and minimum, fares, rates or charges of, and to
prescribe all rules and regulations necessary
for the government of, each motor bus company;
to prescribe the routes, schedules, service,
and safety of operations of each such motor bus
company; * * *

"(b) The Commission is hereby vested with authority to supervise, control and regulate all terminals of motor bus companies, including the location of facilities and charges to be made motor bus companies for the use of such terminal, or termini; provided, that the Commission shall have no authority to interfere in any way with valid contracts existing between motor bus companies and the owner or owners of motor bus terminals at the time of the passage of this Act.

"(d) The Commission is further authorized and empowered to supervise and regulate motor bus companies in all other matters affecting the relationship between such motor bus companies and the traveling public that may be necessary to the efficient operation of this law."

"Sec. 12. * * * The Commission shall have the power and authority under this Act (Art. 911a; P. C. Art. 1690a) to do and perform all necessary things to carry out the purpose, intent, and provisions of the Act (Art. 911a, P. C. Art. 1690a), whether herein specifically mentioned or not, and to that end may hold hearings at any place in Texas which it may designate."

We call your attention to the case of Highway Transportation Co. v. S. W. Greyhound Lines, 124 S. W. (2d) 433, Jan. 4, 1939. The court in this case had before it the question of whether or not the Commission had the power under "the Motor Bus Law, 4(b)" to require the use of terminals by bus lines other than those having contractual rights therein, and secondly if construed to confer such power, does it provide for notice and hearing to the affected parties. The court's opinion reads:

"The order is void, in any event, in that it was passed without notice or hearing.

"Since we are holding the order void on

another ground, it is not necessary to pass
upon appellee's first ground, but will assume,
for present purposes only, that the Motor Bus
Law confers upon the Commission the power to
make the order.

"* * * The Commission is charged with the
duty of determining, in the first instance,
whether the application should be granted; and
a wide discretion is vested in it in reaching
its conclusion. Its discretionery powers are
not subject to review; but review is confined
to the issues whether the order is within the
powers of the Commission and is supported by
substantial evidence. To allow review of its
orders otherwise factually would virtually
transfer the administrative functions of the
Commission to the courts; a function for which
they are not equipped. We hold that before
the Commission can pass a valid order subject-
ing the property of a carrier to use by another
carrier and fixing the compensation for such use,
the owner carrier is entitled to notice and
hearing. * * * (Highway Transportation Company
v. S. W. Greyhound Lines, 124 S. W. (2d) 435).

We have felt it desirable to refer to the High-
way Transportation case because of the implied doubt
that it casts upon the validity of the subject regula-
tory statute by raising the question of whether it pro-
vides for notice and hearing as prerequisites of due
process of law. It has been decided in this state,
however, that where rules and regulations affect equal-
ly the entire industry or body being regulated, notice
and hearing before their issuance is not necessary.
Such is the case in respect to the subject rules and
regulations under examination. This point was involved
in the case of Greer v. Railroad Comm. of Texas, 117 S.
W. (2d) 142, error dismissed:

"The Record shows that there were over
200 special commodity carriers operating under
permits granted. There is no compelling reason
why notice and hearing should be required

as prerequisite to the validity of a general
rule and regulation of administrative boards.
* * * The intimate knowledge possessed by the
Commission * * * affords ample basis for dis-
pensing with notice when general regulatory
orders are concerned."

For matters not of a general nature, such as
to require notice and hearing, we believe the statute
provides for them. This question was left open by the
court in the Highway Transportation case. The Commis-
sion is by Article 911a, Section 12, empowered among
other things "to hear and determine all applications of
motor bus companies; to determine complaints presented
to it by motor bus companies * * * or it may institute
and investigate any matter pertaining to automobile pas-
senger transportation for compensation or hire upon its
own motion. The Commission * * * shall have the power
to compel the attendance of witnesses, swear witnesses,
take their testimony under oath, make record there-
of * * *"

We have no doubt but that where hearing are
necessary the Legislature intended that the Commission
hold hearings and hold them in conformity to all requis-
ites of due process including notice. While there is no
specific requirement of hearings and notice, as seen, the
Act, it seems to us clearly contemplates that such must
be had.

"It has * * * been determined that a stat-
ute is not invalid merely by reason of the fact
that it does not expressly provide for notice
and hearing. It may be implied by the courts,
unless the language of the statute excludes
the theory that notice and hearing are neces-
sary." (Tatlow v. Bacon, 101 Kan. 26; 14
A.L.R. 269).

Now regarding the extent of the powers conferred,
we construe these statutes to confer upon the railroad com-
mission of Texas full and complete jurisdiction to pro-
mulgate all rules and regulations reasonably necessary
to further the interest of the traveling public in the

"public service rendered by every motor bus company."
We believe that in regulating the public service, it
necessarily follows that every function undertaken by
a bus company exercised by it to the end of rendering
service, is necessarily embodied in the term "public
service". This would include the sale of tickets to
the public, the rendition of full and complete informa-
tion regarding routes, schedules, charges, etc. We be-
lieve that the loading and unloading of passengers at
terminals, the location of terminals and the general
management of terminals, all are component parts of the
public service rendered. Each functions is necessary to
the "convenience of the traveling public" and all go in-
to the "conduct of the business."

Special reference is made to the latter part
of subsection (b), quoted above, wherein the Commission
is precluded from interfering with existing valid con-
tracts between motor bus companies and owners of motor
bus terminals. This specific prohibition necessarily
implies the power in the Commission to "interfere" and
regulate all such contracts entered into subsequent
to the date of the Act.

Reference is made to the case of City of Bal-
linger, et al v. Nichols, 297 S. W. 480. In this case
the Court of Civil Appeals, while it held a city ordi-
nance purporting to regulate bus terminals invalid as
being beyond the power of a municipality, the court did
point out that the Legislature of the State had already
delegated such power to the Railroad Commission of Texas.
In discussing the case, the court said:

"The sixth section of the ordinance re-
quires for this character of traffic, the es-
tablishment and maintenance of a central station
or depot on sand discharging passengers or freight,
makes it unlawful to take on or discharge pas-
sengers or freight at any other point in the
city.

"All reasonable traffic regulations, such
as limit of speed (where not controlled by general
law) designations of routes, general traffic
rules affecting all motor vehicles, and such
like matters, would seem to fall within the
delegated powers. The provisions of Section

6 of the Ordinance, requiring establishment of
one central depot, and inhibiting taking on or
discharging of freight at any other point with-
in the city,are, we think regulations affect-
ing the <u>conduct of the business as a convenience</u>
<u>to the traveling public</u>, and cannot properly be
classified as street traffic regulations. The
state has authorized the business but has never
delegated its regulation to municipal corpora-
tions. It may be noted in this connection that
the Regular Session of the Legislature passed
a comprehensive act vesting such regulations
in the Railroad Commission. General Laws, Regu-
lar Session, Fortieth Legislature, ch. 270, p.
399, et seq. The establishment of depots clear-
ly pertains to the conduct of the business of
transportation, and is not a street traffic regu-
lation."

In the case of Woolf v. Del Rio Motor Transpor-
tation Company, 27. S. W. (2d( 874, Court of Civil Appeals
said:

"The Railroad Commission is vested with
power to prescribe rules and regulations neces-
sary for the government of motor bus companies,
and routes and safety of operation of each motor
bus company. There are details in the law that
give general and specific power to the Commis-
sion, showing how completely the subject is
placed within their power. It is not necessary
to discuss or present citation of authorities on
the subject."

In the case of State v. Public Service Commis-
sion 111 S. W. (2d) 982, in respect to a similar delega-
tion of authority to the Public Service Commission of
the State of Missouri, it was held:

"The purpose of the Legislature was to pro-
mote the welfare of the state by regulating
Common Carriers by motor vehicle * * * It there-
by vested the Commission with certain positive
powers, expressly conferred and also invested

it with all others necessary and proper to carry out fully and effectually all such powers so delegated, and necessary to give full effect to the act * * * the Commission is authorized to make general rules where their promulgation 'are necessary or proper to enable it to carry out fully and effectually all the purposes of the Act'."

Regarding the interpretation of a similar grant of authority to an administrative Commission to regulate service of motor transportation companies, the court in the case of Motor Freight Express, et al v. Public Service Commission, Superior Court of Pennsylvania, 177 A, 490, held that "service" includes regulation of "interchange of freight" between different lines. "Public service" as it relates to motor bus transportation would by the same token include the "interchange of passengers" between different lines.

We cite without discussion the following cases where certain ordinances of cities were promulgated pursuant to authority to make general rules and regulations governing public service vehicles. They uniformly sustain the implied power to require the use of terminals where the specific authority to make such requirement was not given. So, in the present instance, where the Commission is specifically given authority to require use of terminals and to regulate their location, etc., it follows that particularly in view of the general delegation of authority in subsection (d) of Section 4, that the Commission has the power to promulgate detail regulations for the terminals.

Ex Parte Stalloups (1920) 220 S. W. 547;
Ex Parte Parr (Ct. Crim. App. (1919)), 200 S. W. 404;
Kissinger v. Hay (1908) 52 Tex. Civ. App. 295;
Commonwealth of Massachusetts v. Rice, 158 N. E. 797;
Corporation Commission of No. Carolina v. Transportation Commission, 151 S. W. 648, 198 No. Carolina, 317;
Peoples Rapid Transit v. Atlantic City, 144 A, 63.

You request our opinion regarding the validity of each of the rules and regulations contained in your Motor Bus Docket No. 1345. They are too lengthy to copy here, but upon consideration of each we believe them all to be within the jurisdiction of the Commission to promulgate. That the Legislature has mentioned expressly certain powers, the rule of implied exclusion as to others does not here obtain, because, first, of the very general grant found in subdivisions (a) and (d) of Section 4, Article 911a; second, the specific enumeration of certain powers in subsection (b) follows a general grant and comes after the word "including"; third Section 12 of the Act grants the Commission power and authority to do all necessary things to carry out the purpose and intent of the Act "whether herein specifically mentioned or not." A reading of the record of the hearing held by the Commission regarding these rules and regulations reveals that there is substantial evidence supporting the findings of the Commission upon which the subject rules and regulations are based. It is our opinion that they are valid.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By        Hugh Q. Buck
               Assistant

HQB:ob

APPROVED AUG. 23, 1939
GERALD C. MANN
ATTORNEY GENERAL OF TEXAS

Approved:
OPINION COMMITTEE
By  RWF, Chairman